IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| J. D. LONG, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 2:11-CV-00294-RWS-JCF |
| | : | |
| v. | : | |
| | : | |
| DANE KIRBY, et al., | : | PRISONER CIVIL RIGHTS |
|    Defendants. | : | 42 U.S.C. § 1983 |

**ORDER**

The Magistrate Judge recommends (Doc. 85) that Defendants' motions for summary judgment (Docs. 63, 64) be granted and that Plaintiff's amended complaint alleging deliberate indifference to his serious medical needs (Doc. 21) be dismissed. Plaintiff objects. (Doc. 87). In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of those portions of the Report to which Plaintiff objects, and has reviewed the remainder of the Report for plain error. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

Plaintiff first objects that the Magistrate Judge ignored his claim of retaliation contained in Count III of his amended complaint, which he now asserts was based on his contentions that inmates threatened him and that "[a]t least one supervisor openly encouraged the inmates to harass [him]." (Doc. 87 at 3-4, 6-7). In fact, however, as

the Magistrate Judge has pointed out, Plaintiff did not raise a claim of retaliation based on alleged threats and harassment from inmates, but instead argued that he was denied medical care as retaliation for requesting medical care, which the Magistrate Judge properly construed as nothing more than another way for Plaintiff to allege that Defendants were deliberately indifferent to his serious medical needs.  (*See* Doc. 85 at 36-37 & n.6; Doc. 21-3 at 8-13).  This objection fails.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

Plaintiff next objects that the Magistrate Judge failed to make every inference "in the light most favorable to" him.  (Doc. 87 at 4).  He states that the Magistrate Judge accepted the medical records regarding Plaintiff's treatment that Defendants placed into evidence, even though he "testified that the records were not correct and that his requests for help" received no response, and he also provided "the affidavit of a cellmate[,] Terry Ross, who swore under oath that Plaintiff's calls for help on the intercom" received no response and that "jailers" told Ross to ignore Plaintiff.  (*Id.*).  Plaintiff also objects to the Magistrate Judge's conclusion that none of his individual medical problems rose to the level of a serious medical need because, he now alleges,

2

his deliberate indifference claim all along has been "that the combination of the continual disregard of the cries for pain and delay in getting [him] to the hospital, etc. was a form of punishment." (*Id.* at 7). He states that

> *while the medical problems might not have been life threatening*, they were certainly serious in total, and the ignoring by the deputies when he and his cellmates were calling for help certainly exacerbated his pain with no legitimate reason for the delay. *There is no question that the four trips to the hospital were for medical reasons, and to force the Plaintiff to be in pain for an extended time until he agreed to pay for his treatment [is] the intentional infl[i]ction of pain.*

(*Id.* at 8-9 (emphasis added)). Plaintiff also objects to the Magistrate Judge's conclusion that he has failed to present a genuine issue for trial on "the issue of medical help [being] denied until [he] paid for his treatment." (*Id.* at 5-6).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). In order to avoid summary judgment, the nonmoving party, Plaintiff here, must come forward with specific facts to show that there exists a genuine issue for trial. *See, e.g., Nawab v. Unifund CCR Partners*, No. 13-12820, 2013 U.S. App. LEXIS 25734, at *9 (11th Cir. Dec. 27, 2013) ("When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only

3

proper but required." (citing *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981)); *Dawkins v. Fulton County Gov't*, 733 F.3d 1084, (11th Cir. 2013) (same); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and that the "moving party is entitled to judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof"). Although "[t]he summary judgment standard requires [a court to] resolve all *reasonable* doubts in favor of the non-moving party, . . . it does not require [the court] to resolve all doubts in such a manner." *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) (internal quotations omitted) (emphasis added). " 'Plausible inferences must be resolved in favor of the party opposing summary judgment, but [need not be so resolved if] the inferences [the nonmoving party] presses on [the court] . . . are not plausible.' " *Id.* (quoting *Gramenos v. Jewel Co., Inc.*, 797 F.2d 432, 436 (7th Cir. 1986); (*see also* Doc. 85 at 2-4 (citing cases)).

In light of the foregoing caselaw and Plaintiff's objections, it is instructive to consider at length how the Magistrate Judge analyzed a portion of Plaintiff's

deliberate indifference claims.[1]

Other than his own testimony, Plaintiff has provided in support of his allegations only an affidavit from an alleged fellow prisoner, Max Jones, who states that while incarcerated at the FCDC [Fannin County Detention Center] "he observed Plaintiff . . . falling with back problems, . . . hav[ing] visible allergic reaction[s] on several occasions, . . . using the intercom to call for help because of various medical problems," with no response, and "on at least one occasion [he] witnessed [Plaintiff] writhing in the dorm floor with kidney pain and asking the jailers to help him." Jones states that when he asked the jailers to help Plaintiff he "was told that [Plaintiff] was always putting on and pretending to be hurt, and that he . . . should ignore . . . Plaintiff." Affiant also states that at least once he observed Plaintiff fall in the dorm, and when the Deputy arrived he "never checked on" Plaintiff's physical condition but "simply stood by until the EMTs arrived."

Plaintiff has provided no other evidence to corroborate his claims that he was allowed to lie on the floor writhing in pain for hours at a time before being transported to the hospital or receiving any treatment at all. Jones's affidavit provides no specifics regarding dates and times, making it almost impossible to match his description of events with Plaintiff's, especially in light of Plaintiff's own tendency to describe events without providing dates and sometimes to provide differing versions of the same alleged event, as he has done regarding his alleged kidney stone attack in June 2011.

Plaintiff describes four trips to the hospital between June and September 2011. Plaintiff claims he lay "in the floor moaning for several hours" with back pain before being taken to the hospital on June 17, although he agrees with the Medical Defendants' explanation that in response to a telephone message from Queen, Evans first ordered that

---

[1]The Court notes that Plaintiff attempted to support his claims with an affidavit from Max Jones, not Terry Ross, as Plaintiff now states in his objections.

5

Plaintiff be given pain medication for his back and then ordered that he be taken to the FCRH [Fannin County Regional Hospital] when his complaints of pain did not subside, and that upon his return to the FCDC Plaintiff received the medications prescribed by Dr. Turner, his FCRH attending physician.

Plaintiff alleges that he suffered horrible pain as a result of a kidney stone before being taken to the FCRH on June 25, 2011, although there is no record of such a visit. Plaintiff also presents two different versions of this event, stating in the first version, in his amended complaint, that he lay on the floor for two hours before being taken to the FCRH (which included 45 minutes waiting for the EMTs to arrive after they were called) and stating in the second version, in his Consolidated Response, that he lay on the floor for twelve hours, although he does not mention a hospital visit in this version. Plaintiff has offered no medical evidence that he suffers from kidney stones. All tests to that effect appear to be negative. Plaintiff also acknowledges that he told medical personnel at the FCDC on June 29, 2011 that although he was still having pain and "not moving water," he was "feeling better." These allegations simply do not state a genuine issue for trial regarding the alleged deliberate indifference of the Medical Defendants or of anyone else at the FCDC to Plaintiff's alleged kidney stone pain.

With regard to Plaintiff's trip to the FCRH for lower back pain on September 10, 2011, there is no medical evidence that Plaintiff's back condition was a serious medical need, as explained above with respect to Plaintiff's claim about the discontinuation of his prescribed medication by McMunn. Dr. Turner at the FCRH observed Plaintiff on September 10 to be in "no acute distress" and characterized his condition as "non-emergent." Although the discontinuation of the pain and anti-inflammatory medications upon Plaintiff's return from the FCRH is questionable, that decision is a judgment call that is best left to the medical providers at the FCDC and not to the courts. Finally, with respect to Plaintiff's last trip to the FCRH on September 26, 2011,

after he passed out and hit his head, Plaintiff acknowledges that the Medical Defendants' description of the events is correct. Because the Medical Defendants describe an entirely reasonable response to the situation, Plaintiff has failed to make out a claim of deliberate indifference based on this incident.

Plaintiff also alleges in his amended complaint that he suffered from a "constant rash on his body and limbs," and he describes an incident when he allegedly had a severe allergic reaction to a Hot Fry, from which he might have died without the Benadryl that Evans ordered he not be given, but which Sergeant Burrell gave him anyway. Plaintiff has provided no evidence to support these allegations, and the medical records that the Medical Defendants have provided belie these claims. For example, Plaintiff's medical requests in June and July 2011 concerned mainly his alleged kidney problems, and when he mentioned on July 18, 2011 that his "allergies ha[d] gone crazy (headach[e]) sore throat," he apparently received allergy medication, about which he complained on July 23 that it was "not working." On July 25, 2011, he submitted a medical request, stating: "Still having allergic problems having dizzy spells one yesterday again this morning. Having back pain. It could be my blood pressure." These medical requests do not describe serious medical needs, and with respect to his alleged severe allergic reaction to a Hot Fry, there is no supporting medical evidence in the record and no statement or testimony from Sergeant Burrell to support Plaintiff's claim.

In sum, because the Medical Defendants have properly supported their motion for summary judgment, Plaintiff must "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., he "must come forward with significant, probative evidence." "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." Plaintiff has failed to provide the necessary supporting medical evidence. Moreover, as noted above, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the

7

> non-movant relies, are implausible." Frankly, it is implausible that the Medical Defendants would provide Plaintiff with the vast array of prescription medications that they made available to him during the course of his stay at the FCDC, only to deny him simple over-the-counter medications like Ibuprofen or Benadryl to alleviate Plaintiff's allegedly excruciating pain or life-threatening allergic reactions.

(Doc. 85 at 28-33 (citations omitted)).

Not only does this analysis demonstrate that many of the claims that Plaintiff presented in his amended complaint and in his response to Defendants' summary judgment motions are confused, unsupported, vague, and even self-contradictory, but it also reveals that Plaintiff to this day is still misinformed about the nature of those claims, which happen to be his own. He now admits, for example, that his "medical problems might not have been life threatening" (Doc. 87 at 8), although he earlier claimed that his life was threatened at least once by Defendants' deliberate indifference to one of his severe allergic reactions. And, as noted above, he now asserts that he raised a retaliation claim based on alleged harassment from fellow inmates, although the record demonstrates that he did not.

Plaintiff has not supported his many vague and even self-contradictory allegations with specific, *plausible* facts, and thus he has failed to make a sufficient showing on the elements of his deliberate indifference claims to allow a rational

8

factfinder to grant him relief after making in Plaintiff's favor all *reasonable* and *plausible* inferences from the record evidence. Plaintiff alleges, for example, that an FCDC guard saved his life by ignoring instructions from one or more of the Defendants not to give him Benadryl. Although Plaintiff's counsel deposed each Defendant, he did not depose or otherwise obtain supporting evidence from the guard who Plaintiff alleges saved his life. And although Plaintiff asserts that for years he has suffered from kidney stones, all the while being treated by private doctors for a whole host of problems, the Court is not aware of any evidence that Plaintiff has presented to establish that he has ever been treated for kidney stones. It is also relevant with respect to the plausibility of Plaintiff's claims that he apparently placed into the record—regarding his alleged weight loss while at the FCDC—a rather blatant misrepresentation, which he later acknowledged, albeit indirectly, to be untrue. (*See* Doc. 85 at 33).

Plaintiff alleges that he experienced a serious medical need on at least four occasions, each time requiring his hospitalization, but (a) he cannot get his story straight on one of those hospital trips (regarding the alleged kidney stone attack); (b) he was found not to be in acute distress upon arriving at the hospital on each of his trips; and (c) the video of the prelude to his final hospital trip on September 26,

9

2011 shows him collapsing rather gently from a standing position onto the floor; resting comfortably there while chatting with fellow inmates, FCDC guards, and emergency personnel; and being removed to the hospital in a neck brace and on a stretcher within approximately fifteen minutes of his fall. As the Magistrate Judge rightly concluded, Plaintiff has not presented sufficient evidence of a serious medical need to avoid summary judgment in favor of Defendants on his deliberate indifference claims. There appears to be no medical evidence to support Plaintiff's claims, and there is a plethora of evidence to contradict them.

Therefore, as the Magistrate Judge also rightly concluded, Plaintiff's claims regarding the alleged actions or inactions of the Sheriff and the Sheriff's officers fail. Also insufficient are Plaintiff's claims regarding the payment arrangements for his trips to the hospital or for the medications that he demanded he receive in place of those offered for free by Defendants, for which the only harm Plaintiff has identified as a result is that "it really pissed [him] off" and that it strained his family's budget, not that it adversely affected any of his medical conditions. (*See* Doc. 85 at 34-40 & n.7).

All of Plaintiff's objections fail. The Court finds no error, plain or otherwise, in the Magistrate Judge's Report, **OVERRULES** Plaintiff's Objections (Doc. 87),

10

**ADOPTS** the Magistrate Judge's Final Report and Recommendation (Doc. 85) as the Order and Opinion of this Court, **GRANTS** Defendants' Motions for Summary Judgment (Docs. 63, 64), and **DISMISSES** this civil action.

   **IT IS SO ORDERED** this   21st   day of March, 2014.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE